IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| HOLSUM, INC. | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:20-cv-00367 |
| | ) | |
| DR. ROBERT NAGEL, D.V.M & | ) | |
| DR. LORI NAGEL, D.V.M. | ) | |
| | ) | |
| Defendants. | | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff Holsum, Inc. ("Holsum" or "the Company") states as follows in support of its Complaint for Declaratory Judgment:

**PARTIES**

1. Holsum is a New Mexico corporation with its principal place of business in Roswell, New Mexico.

2. Defendants Dr. Robert Nagel, D.V.M., ("Dr. Nagel") and his spouse Dr. Lori Nagel, D.V.M., (collectively, "the Nagels"), are natural persons residing in Calumet County, Wisconsin.

**JURISDICTION**

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because of the Parties' diversity of citizenship and because the matter in controversy, exclusive of interest and costs, exceeds $75,000.

4. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the events giving rise to the Parties' dispute occurred in, and the Defendants are residents of, this District.

1

5. The Complaint before this Court is a civil action for declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*

## BACKGROUND

6. Through an affiliate company (Holsum Dairies, LLC), Holsum owns and operates dairies in Wisconsin.

7. Dr. Nagel serves as manager for the dairies.

8. In 2018, Holsum considered a method for more efficiently utilizing the methane biogas generated by the dairies' operations. Historically, the biogas captured from the dairies' digesters was used on-site for electrical generation and heating. Dairies across the country, however, are beginning to capture their biogas for sale and/or distribution to third-party gas services. In addition to revenue from the sale of the gas, the availability of transferable "green energy credits" associated with the biogas's capture is another potential source of revenue.

9. At first, Holsum and Dr. Nagel considered the use of a third party to construct the Project and conduct the dairies' biogas operations. After some analysis, this proposal was rejected by Holsum for economic reasons. It was subsequently decided that Holsum, itself, would construct and operate the biogas facility and an accompanying pipeline for distribution to gas service providers (the "Project"). Holsum estimates the Project will require a capital investment approaching $10 million.

10. Holsum was open to the idea of Dr. Nagel owning a minority interest in the Project as a means to incentivize him and better ensure the Project's financial success. Holsum did not need Dr. Nagel's financial contribution to finance the Project. Dr. Nagel similarly owns approximately 2% of the Holsum affiliate, Holsum Dairies, LLC.

11. Holsum, led by its CEO, Andrew Teoh, and Dr. Nagel began protracted negotiations concerning the ownership, management, and mechanics of operating the Project.

12. In the course of negotiation, Holsum and Dr. Nagel considered utilizing a separate limited liability company ("LLC") to own the Project. It was contemplated that Holsum would have a membership interest in the proposed LLC, as would Dr. Nagel. Unfortunately, Holsum and Dr. Nagel failed to achieve an agreement as to the ownership and management structure of the LLC.

13. On October 11, 2018, Holsum presented Dr. Nagel with a proposed term sheet relating to the Nagels' putative ownership interest and rights in the Project. Ex. 1 (10/11/2018 A. Teoh email). Dr. Nagel "had significant problems with the proposed terms" and rejected them. Ex. 2 at 1 (2/5/2020 R. Nagel email). Holsum provided Dr. Nagel with a revised term sheet on November 16, 2018. *See id.* Dr. Nagel rejected these terms as well. *See id.*

14. On November 22, 2018, Dr. Nagel had a telephone conversation with two members of Holsum's board of directors in which, according to Dr. Nagel, "material terms for [the] mutual participation in the [P]roject" were discussed. *See id.*

15. During this call, Dr. Nagel asserts several terms were discussed and set forth in a subsequent document he drafted. The terms, according to Dr. Nagel, were as follows:

    a. The Project would be initially capitalized with $1,000,000. Holsum would contribute $800,000 and the Nagels would contribute $200,000.

    b. Initially, Holsum would receive 80% of the equity in the LLC formed to own and operate the Project. The Nagels would receive a 20% equity interest.

    c. The remaining funds necessary to complete construct the Project would be financed with debt.

d. The total cost for constructing the project would be between $7,000,000 and $10,000,000. Dr. Nagel would receive an additional 5% equity interest in the LLC that had ownership of the project "as consideration both for bringing the deal to the table and as a bonus if [he was] successful in keeping the total project cost down."

*See id.*; Ex. 3 (11/28/2018 R. Nagel email with attached spreadsheet).

16. While no agreement had yet been reached on the terms of the LLC, the Project moved forward. In 2019, Holsum, through its affiliate, incurred costs associated with the design and construction of the Project. Dr. Nagel has not contributed any capital. In fact, Holsum has borne the entire cost of the design and construction of the project—well over $5,000,000—to date.

17. On or about July 8, 2019, a draft operating agreement was prepared for a business entity called "Holsum Biogas LLC." Ex. 4 (7/8/2019 R. Nagel email); Ex. 5 (7/2019 draft operating agreement). The draft agreement contemplated that it would be "effective upon execution" and that it was between the Nagels and Holsum. Ex. 5 at 1.

18. Mr. Teoh corresponded with Dr. Nagel on July 26, 2019, by email about the draft agreement. Ex. 6 (7/26/2019 A. Teoh email). In his email, Mr. Teoh stated that Holsum wanted to "clarify a few items" and included a set of comments and proposed changes to the draft. *Id.*

19. In or about August 2019, a revised operating agreement was prepared. *See* Ex. 2 at 2. This draft operating agreement referred to the LLC for which it was prepared as "Calumet Sustainable Energy LLC." *See* Ex. 7 at 1 (8/2/2019 draft operating agreement). The August 2019 draft agreement contemplated that it would be "effective upon execution" and that it too would be between the Nagels and Holsum. *Id.*

20. On August 2, 2019, a limited liability company with the name "Calumet Sustainable Energy LLC" was organized with the Wisconsin Department of Financial Institutions.

Information publicly available on the Department of Financial Institutions' website shows that the registered agent for the LLC is "Robert Nagel."

21. Neither Mr. Teoh nor Holsum's Board of Directors had reviewed the August 2nd draft operating agreement until November 12, 2019, when Dr. Nagel forwarded a copy of the agreement that bore the Nagels' signatures.[1]  Ex. 8 at 1 (1/10/2020 A. Teoh email).

22. Holsum did not execute the August 2nd draft (received on November 12th). *See id.* After reviewing the draft, Holsum had serious concerns about a number of fundamental terms it contained. *See id.* Holsum communicated those concerns to Dr. Nagel, and, on January 10, 2020, provided Dr. Nagel with a completely new draft agreement. *Id.* The January 10, 2020, draft agreement contained terms that were materially different from those in the August 2, 2019 draft. Ex. 9 (1/10/2020 draft operating agreement).

23. Dr. Nagel rejected Holsum's January 10th draft and has taken the position that the Parties already had "an enforceable deal based on . . . core understandings" that had been arrived at during the course of negotiations.  Ex. 2 at 2.  He has also articulated a set of "fundamental terms" from which the Parties "cannot stray."  *Id*. at 2-3.

24. Several of these "fundamental terms" are items that Holsum rejects.  In particular, Holsum rejects the following terms demanded by Dr. Nagel:

    a. Dr. Nagel's receipt of an additional 5% "bonus" equity interest beyond the 20% reflecting his capital contribution.

    b. Dr. Nagel's service as "sole-manager" with substantial authority to act independent of Holsum.

    c. Membership votes requiring 81% to be effective, thereby giving Dr. Nagel veto power over Holsum.

---

[1] Although Dr. Nagel asserts his right to be sole manager of a manager-managed LCC, the August 2nd draft he signed states the LCC will be member-managed. Ex. 7 at 1.

d. Member voting power automatically transferring to Dr. Nagel's spouse and children, forcing Holsum into a long-term business arrangement with Dr. Nagel's teenage children.

e. Dr. Nagel's receipt of cash compensation (plus his equity) for his services related to the Project.

f. In the event of a compelled buyout of Dr. Nagel, Holsum paying under a valuation that does not apply a standard minority interest discount.

25. Because of the Parties' irreconcilable disagreements, negotiations between them have deteriorated.

26. Dr. Nagel insists Holsum is contractually bound to deal points Holsum preliminarily consented to during the course of negotiating the operating agreement, even though Holsum refused to execute any of the draft operating agreements. He also insists he has an existing ownership interest in the Project, even though he has not contributed any capital.

27. Holsum, for its part, denies that any of the Parties' prior negotiating positions are binding. Rather, the Parties had an unenforceable "agreement to agree" to form an LLC with the Nagels that would own and operate the Project and that would be governed by terms committed to a written operating agreement.

28. Holsum asserts, as the only financial contributor, it (or its affiliate) owns the Project in its entirety. The Nagels' counter-demand for ownership creates uncertainty regarding the multi-million dollar project. Dr. Nagel has even suggested the Project could be "derailed" should the negotiations not favorably conclude. The current situation is untenable and wasteful. The Court's intervention is needed to bring certainty and permit the Project to be completed without disturbance.

6

4824-7601-2982 v10
Case 1:20-cv-00367-WCG   Filed 03/05/20   Page 6 of 8   Document 1

## COUNT I: DECLARATORY JUDGMENT

29. Holsum incorporates by reference its allegations in all preceding paragraphs above as if fully set forth herein.

30. There presently exists a justiciable case or controversy between Holsum and the Nagels.

31. Holsum and the Nagels have adverse legal interests of sufficient immediacy to warrant the issuance of a declaratory judgment. A lawsuit by the Nagels against Hoslum is likely.

32. A declaration of the Parties' rights and legal relations will terminate the controversy.

33. In particular, the Parties dispute the following:

   a) Whether Calumet Sustainable Energy, LLC owns the Project.

   b) If Calumet Sustainable Energy, LLC owns the Project, what are the Parties' ownership interests in it?

   c) Under what terms is Calumet Sustainable Energy, LLC governed and managed?

WHEREFORE, Holsum seeks judgment on Count I and a declaration from the Court with the following findings:

1. No binding agreement exists as between Holsum and the Nagels in connection with the Project. The Parties' course of negotiations created nothing more than an unenforceable agreement-to-agree under Wisconsin law. Holsum (or its affiliate) owns the Project.

2. In the alternative, and only to the extent the Court finds Calumet Sustainable Energy, LLC owns the Project, there is no enforceable operating agreement. Therefore, the terms and conditions of Calumet Sustainable Energy, LLC shall be governed by the default rules of the Wisconsin Limited Liability Company Act. In particular, the percentage ownership interests of Calumet Sustainable Energy, LLC shall be determined based on the value of the Parties' contributions.

3. In the alternative, and only to the extent the Court finds Calumet Sustainable Energy, LLC owns the Project, a determination of the Parties' percentage ownership interest of Calumet Sustainable Energy, LLC based on the value of their contributions.

4. Any other relief the Court find necessary and just.

Dated: March 5, 2020

Respectfully submitted,

HANSEN REYNOLDS LLC

By: /s/ Andrew J. Kramer

Timothy M. Hansen: SBN 104430
Thomas S. Reynolds II: SBN 1036732
Andrew J. Kramer: SBN 1055182
301 N. Broadway, Suite 400
Milwaukee, Wisconsin 53202
Phone: 414-455-7676
Email: thansen@hansenreynolds.com
Email: treynolds@hansenreynolds.com
Email: akramer@hansenreynolds.com

*Attorneys for Plaintiff Holsum, Inc*.